On the Merits.
Among the alleged nullities is that the petition of the property táxpayers for the calling of the election did not set forth the amount of the taxes to be levied each year as required by section 2, Act No. 202, p. 483, of 1898.
The taxpayers petitioned for the levy of a special ad valorem tax for each year of five mills on the dollar of assessed value on all the property situated within said ward, from year to year, for a period of 10 years, to begin with and include the calender year in which that portion of the defendant railroad is completed and open for traffic from Homer, in said ward, to the Louisiana & Arkansas Railroad, the proceeds thereof to be paid to the defendant company or its assigns ; provided that the failure to. complete said railroad as stated within 36 months from *727 the date of the election should ipso facto operate a forfeiture of the tax to be voted.
The said petition further stipulated that the total amount of taxes paid to defendant company or assigns should not exceed $50,-000, and should this amount be paid before the expiration of ten years said tax should be discontinued; and, further, that no more than five, years’ taxes should be assessed and paid until such railroad should be completed and put in operation between Homer and Shreveport, La.
Section 2, Act No. 202, p. 483, of 1898, provides that the petition of the taxpayers “shall designate the object and amount of the taxes to be levied each year and the number of years during which it shall be levied.”
' Section 7 of said act provides that the police jury “shall levy and collect annually * * * a tax upon all taxable property * * * an amount sufficient to pay the amount specified to be paid in said petition.”
In Bennett v. Police Jury, 113 La. 68, 36 South. 891, a majority of this court construing identical provisions in Act No. 131, p. 200, of 1898, held that the petition of the taxpayers must, under pain of the nullity of the proceedings, state the amount in money proposed to be realized each year from the tax.
The writer of this opinion dissented from the views of the majority. It is to be noted, however, that in the Bennett Case the petition did not set forth any amount, but merely the rate of the tax and the number of years.
In Tolson v. Police Jury, 119 La. 215, 43 South. 1011, the Bennett decision was reaffirmed, but the opinion admits that the ruling -was not necessary for the decision of the case. The writer concurred in the decree on other grounds.
In Gooden v. Police Jury, 122 La. 755, 48 South. 196, the petition of the taxpayers was for the submission of a proposition to levy and collect annually from year to year, not exceeding 10 years, a special tax of 5 mills on the dollar on all the assessable property in ward 1 of Lincoln parish, La., until the full sum of $75,000 be collected; said special tax to be levied during the years from 1910 to 1919, inclusive. The court held that it appeared from these recitals of the petition that the tax was to be levied for the amount of $7,500 for each year, provided the rate of 5 mills per annum was not exceeded, and held that the petition was sufficient.
There is no essential difference between the petition in the Gooden Case and the petition in the case at bar. In that case the taxpayers intended that the railroad company should receive a bonus of $75,000, if the tax rate voted should prove sufficient to produce that amount. In the case at bar the intended bonus was $50,000, if the rate voted should produce that amount during 10 years. The petition informed the body of taxpayers of the proposed rate of the tax, the number of years it was to be levied, and the maximum amount to be collected in aid of the railroad enterprise. In the Gooden Case the total bonus exceeded the probable proceeds of the 5 mill tax for 10 years. In the case at bar, the amount of the bonus within the limitation of $50,000 depends on the total amount of the taxes to be collected.
We therefore are of opinion that the petition of the taxpayers was a substantial compliance with the provisions of the statute.
The Bennett and Tolson Cases may be differentiated by the fact that in neither was any amount designated in the petition.
2. The failure to publish the names of all the signers of the petition was not a fatal defect in the proceedings. Duperier v. Viator et al., 35 La. Ann. 957.
3. The returns of the election and the proclamation of the result show that the proposition was carried by a majority of the *729 property taxpayers, in number and amount, voting at the election. This was sufficient under the terms of section 5, Act No. 202, p. 483, of 189S, but plaintiff has assailed the provisions of said section as repugnant to the clause of article 270, Const. 1898, on the same subject-matter, to wit:
“By a vote of the majority of the property taxpayers in number entitled to vote under the provisions of this Constitution, and in value.”
Article 242, Const. 1879, on the same subject-matter, reads:
“By a vote of the majority of the property taxpayers in number and value.”
Whether article 242 meant a majority of the total number of taxpayers, or a majority of those present and voting, was a matter of doubt. In Citizens and Taxpayers v. Williams, 49 La. Ann. 422, 21 South. 647, 37 L. R. A. 761, it was held by a divided court that the article meant a majority of those actually present and voting.
The framers of the Constitution of 1898 in revising article 242, Const. 1879, changed its phraseology so as to make it read “by a vote of the majority of the taxpayers in number entilleá7 to vote under this Constitution.” (Italics ours.)
In Flores v. Police Jury, 116 La. 428, 40 South. 785, this court said:
“Articles 232 and 270 are plain and free from the ambiguity and obscurity of the corresponding articles 209 and 242 of the Constitution of 1879, which led this court by a bare majority to construe them together as laws on the same subject-matter. Citizens, etc., of De Soto Parish v. Williams, 49 La. Ann. 422, 21 South. 647 [37 L. R. A. 761].”
In the Flores Case it was contended that articles 232 and 270 should be construed together, and on this point the court said:
“The framers of the Constitution of 1898 intentionally divorced articles 232 and 270, and in the latter imposed more onerous conditions on the voting of special taxes. Under article 232 a majority in number and value voting_ at the election controls, while article 270 requires a vote of the majority of the property taxpayers in number and in value entitled to vote under the provisions of the Constitution.”
Conceding that the above expressions are dicta, they were relevant to the issue then before the court, and we now adopt them as the basis of our decision in this case. -Considering the genesis of article 270, we see no room for reasonable doubt as to the intention of the framers of the Constitution of 1898 in altering the phraseology of article 242 of the Constitution of 1879. This change was made for the express purpose of making it clear, that the majority required was of the whole body of taxpayers entitled to vote, and not a majority of those actually voting as in case of elections under article 232. The radical difference in the language used in the respective articles cannot otherwise be explained.
The reason for the difference is that article 232 relates to special taxes for works of public improvement, “the title to which shall be in the public,” and article 270 refers to special taxes in aid of “public improvements or railway enterprises,” belonging to corporations of a quasi public nature. Article 232 is found under the title “Revenue and Taxation,” while article 270 appears under the caption “Corporations and Corporate Rights.”
It follows that section 5, Act No. 202, of 1898, is repugnant to article 270 of the Constitution.
It is, however, contended by the defendant that the tax was voted by a majority in number and value as required by article 270, Const. 1898.
It is very doubtful whether article 270 can be enforced without a proper enabling act providing the machinery for ascertaining the names and qualifications. of all the taxpayers in the district entitled to vote under the Constitution. But this question need not be now decided.
As the returns only show a majority of those voting, the onus is on the defendant to prove that the affirmative votes constituted a majority of the taxpayers, including wo *731 men, entitled to vote at the election. It is admitted that the names of 303 taxpayers appear on the rolls, and that 138 of them voted in favor of the tax. Defendant contends that 54 names should be deducted for various reasons, leaving 249 entitled to vote.
It is contended that 15 taxpayers whose names appear on the registration books should be deducted because they had not signed their names in the column for signatures.
As these 15 must have shown under oath that they were qualified voters under the Constitution before their names could have been entered on the registration book, the contention is reduced to the proposition that the mere failure of a duly qualified voter to sign his name on the book renders his registration null and void. We do not think that, .in this collateral proceeding, the court has any jurisdiction to purge the registration rolls of the parish. Article 201 of the Constitution contemplates a direct action against the voter for the purpose of striking his name from the registration rolls. And on such an issue gives a right of appeal to the Supreme Court.
It is next contended that 19 names of' taxpayers should be deducted because “they are not assessed with property in both 1907 and 1908 so as to show affirmatively their property was in ward 7.” It is not proven that' the property assessed to such persons is not situated in ward 7, but it is argued that their assessments do not show the fact affirmatively.
As before stated the burden of £roof is on the defendant to show affirmatively that the 138 votes in favor of the tax represent a majority of the taxpayers of the ward entitled to vote under the Constitution of this state.
Such a showing cannot be made unless the total number of such taxpayers be proven with legal certainty. These 19 taxpayers, otherwise qualified to vote, may all own property in ward 7. In the country, property is not assessed by wards. It follows that the question of the situs of property as to a ward is a matter in pais. Hence there is no presumption either way.
The deduction of the 34 names referred to is not warranted by the evidence. The result is that the defendant has failed to show that the tax was carried by the required constitutional majority.
The question whether other taxpayers who have not contested the election within the period of prescription can avail themselves of the judgment herein rendered cannot be now considered.
It is therefore ordered that the judgment be affirmed.
PROVO STY, X, concurs.