No. 14,521.

WEYBRIGHT *v.* KLEIN, MAYOR ET AL.
(92 P. [2d] 734)

Decided July 3, 1939.

Messrs. LANGDON & BARBRICK, Mr. GEORGE S. COSAND, for plaintiff in error.

Mr. CARL LOUGH, Messrs. PERSHING, NYE, BOSWORTH & DICK, Mr. CLYDE C. DAWSON, JR., for defendants in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appear here in the same order as in the trial court. We hereinafter refer to plaintiff in error as plaintiff and defendant in error as the city.

The city was engaged in acquiring and constructing an electric plant. Plaintiff brought injunction to stop it. To the second amended complaint the city demurred for want of facts. That demurrer was sustained and plaintiff elected to stand. To review the judgment entered accordingly he prosecutes this writ.

Such was admittedly the law that to consummate its acquisition the city had to adopt an ordinance embodying its plan, which ordinance required the approval of electors. The statute says by "a majority of the qualified property electors of such city or town as shall in the next year preceding the year of election have paid a property tax therein." The ordinance was so adopted by a majority of such electors *voting,* which, however, was not a majority of *all* such electors in the city. If the former were sufficient the demurrer was properly sustained; if the latter were required the judgment must be reversed.

The act in question is chapter 192, S. L. 1927. The particular section involved is the first, now section 37, chapter 137, '35 C. S. A.

 It is said that the question of construction is put at rest by the fact that the act, as originally introduced, required only the approval of a majority of those actually voting thereon, because the amendment in phraseology proves a change in intent. It is also argued that when the intent is to limit approval to "a majority of those voting," that, or similar language, is always employed;

citing numerous sections of our Constitution and statutes. The conclusion properly deducible from the last mentioned fact is against the plaintiff, for while a number of these acts relate to the creation of indebtedness, and the vote thereon is limited to taxpayers, no instance, unless it be the one before us, has been discovered where the lawmakers did such an absurd thing as to require a majority of all those qualified. The difficulty of ascertaining the total number of qualified taxpaying electors is a confusing fact in many of the authorities. We can not agree that the controlling consideration is or should be the fiction that all qualified taxpaying electors vote. Practical experience demonstrates the contrary. Not only that but in most instances no proposition would clearly receive the approval of a majority of *all,* and such an iron clad rule would prove a perpetual block on the wheels of progress. Courts will countenance absurdities in the law only when driven thereto. Government by majorities does not rest upon the fact that majorities actually express themselves, but upon the necessary presumption that the silent electors approve what the articulate do, otherwise they would protest. *People ex rel. v. Sours,* 31 Colo. 369, 388, 74 Pac. 167. If the affirmative vote must be a majority of *all,* negative votes are futile, they are as effective uncast as cast.

While there are authorities to the contrary and adjudicated cases capable of that construction we can not approve their logic. We think the construction adopted by the city, and approved by the court, rests upon uniform experience, reasonable rules and the weight of authority, and we prefer to follow it. 20 C. J., p. 205, §266; McQuillin Municipal Corporations (2nd ed.) vol. 2, p. 24, §432; McCrary on Elections (3rd ed.), p. 114, §173. Why "a majority of the qualified electors" should almost universally be construed (as it is) to mean a majority of those voting, and "a majority of the qualified property electors who paid a property tax the preceding year" be construed to mean a majority of *all* such, regardless

of whether they voted, is incomprehensible. We think it a distinction without a difference.

■ "A statute may be construed contrary to its literal meaning, when a literal construction would result in an absurdity or inconsistency, and the words are susceptible of another construction which will carry out the manifest intention." 2 Lewis' Sutherland on Statutory Construction (2nd ed.), p. 913. The following cases, inter alia, support our conclusion. *St. Joseph Township v. Rogers*, 16 Wall. 644; *Carroll Co. v. Smith*, 111 U. S. 556, 4 Sup. Ct. Rep. 539, 28 L. ed. 517; *In Re Validation of East Bay Mun. Dist.*, 196 Cal. 725, 239 Pac. 38; *Citizens and Taxpayers v. Williams*, 49 La. Ann. 422, 21 So. 647; *In Re Todd*, 208 Ind. 168, 193 N. E. 865.

We think the contention as to the change of meaning implied by the amendment is answered by the Todd and East Bay cases, supra; and the argument that registration lists furnish a reliable index to "qualified property electors" is so answered by the Carroll County case, supra. The present practical impediments to ascertaining the names of those who shall "in the next year preceding the year of election have paid a property tax therein" are suggested by the fact that the records of our assessors and treasurers reveal only the names of those to whom property is assessed and to whom tax receipts are issued. Neither give definite information as to who paid the tax.

Decisions on statutes specifically requiring "a majority of *all*," or a "majority of all those *registered*," are clearly not in point. Many authorities might be cited supporting generally the interpretation we have adopted. As to the few apparently contrary it is sufficient here to say their reasoning does not appeal to us.

The judgment is affirmed.

MR. JUSTICE FRANCIS E. BOUCK not participating.