199 So. 215

### SCHULTZ v. POLICE JURY, TANGIPA-HOA PARISH.

No. 35833.

June 28, 1940.

On Rehearing Dec. 2, 1940.

Reid & Reid, of Hammond, for appellant.

Bolivar E. Kemp, Jr., Dist. Atty., of Amite, Joseph M. Blache, Jr., Asst. Dist. Atty., of Hammond, and S. S. Reid, Sp. Counsel, of Amite, for appellee.

ODOM, Justice.

By Act No. 392 of 1938, the Legislature submitted to the electors of the state for their approval or rejection a proposition to amend Article XIV of the Constitution by adding thereto a new section, to be known as Section 33, which amendment, if approved, would be self-operative. The amendment was approved by the following vote: For, 117,275; against 17,155.

The amendment provides that, in order to raise funds for the erection and maintenance of industrial plants "for the conversion or processing of raw farm or agricultural products, the Police Jury of any Parish may, as the governing authority of the Parish or any Police Jury Ward thereof, when authorized by a majority vote of the property taxpayers of the entire Parish or any Police Jury Ward, who are qualified to vote under the Constitution and laws of this State, incur debt and issue negotiable bonds for the payment thereof", in a sum not exceeding $300,000.

Pursuant to and under the provisions of this amendment, the Police Jury of Tangipahoa Parish on December 20, 1938, called an election to be held in Police Jury Ward 1 of that parish on February 7, 1939, at which election there was to be submitted the following proposition:

"Shall the Police Jury Ward No. One of the Parish of Tangipahoa, State of Louisiana, incur debt and issue bonds to the amount of Seventy-five Thousand Dollars ($75,000.00) to run for a period of twenty-five years, bearing interest at a rate not to exceed six per cent per annum, payable semi-annually, for the purpose of erecting and maintaining an industrial plant for the conversion or processing of raw farm or agricultural products."

The election was held as ordered, and the proposition was submitted and carried in favor of the bond issue by the following numerical vote: For the issuance of the bonds, 108 votes; against, 23 votes. The vote in property values was as follows: For, $182,666.50; against $21,660. The election results were promulgated by the police jury according to law on February 21, 1939.

Plaintiff, a property taxpayer of Ward 1 of Tangipahoa Parish, brought this suit to set aside the election proceedings and prayed for an injunction prohibiting the police jury from issuing the contemplated bonds. He set out in his petition numerous reasons why the police jury should be prohibited from issuing the bonds.

There was judgment rejecting plaintiff's demands and decreeing that all of the proceedings had, looking to the issuance and sale of the bonds, were legal and valid in all respects, and rejecting plaintiff's demand for an injunction. From this judgment plaintiff appealed.

Only one of the grounds specified by plaintiff for setting aside the proceedings and for an injunction to prohibit the police jury from issuing the bonds need be considered. That ground is that, while it is definitely shown by the ordinance promulgating the results of the election that the bond issue was authorized by a majority vote of the property owners who voted, yet there is nothing to show that a majority of those qualified to vote actually did vote at the election.

The section of the Constitution under which these proceedings were had provides that police juries may issue bonds for the erection and maintenance of industrial plants for the conversion or processing of raw farm or agricultural products, "when authorized by a majority vote of the property taxpayers of the entire Parish or any Police Jury Ward, who are qualified to vote under the Constitution and laws of this State."

It follows therefore that, if the proposition submitted by the police jury was not approved by a majority of all those qualified to vote under the Constitution, the police jury has no authority to issue the bonds.

By comparing this section of Article XIV of the Constitution with other sections of the same article relating to the issuance of bonds, it will be seen that there is a difference in the wording of the provisions.

Section 14 (a) of Article XIV of the Constitution of 1921, as originally adopted, provided that municipal corporations, parishes, and school, road, subroad, sewerage, and drainage districts might incur debt and issue negotiable bonds, "when authorized by a vote of a majority in number and amount, of the property tax-payers qualified to vote under the Constitution and laws of this State, *who vote at an election held for that purpose.*" (Italics ours.)

There have been several amendments of, and additions to, Section 14 (a) of Article XIV. That section was amended by Act No. 51 of 1926, adopted as a constitutional amendment. The amended article, in so far as it relates to the authorization for the issuance of bonds, reads word for word like the original.

The same section was amended by Act No. 261 of 1926, also adopted as a constitutional amendment, so as to add irrigation districts to the list of subdivisions of the state authorized to issue bonds. That amendment provides that the subdivisions mentioned therein may incur debt and issue negotiable bonds when authorized "by vote of a majority in number and amount, of the property taxpayers qualified to vote under the Constitution and laws of this State, *who vote at an election held for that purpose*". (Italics ours.)

Section 14 (f) of Article XIV was amended by Act No. 386 of 1938, also ap-

proved as a constitutional amendment, which amendment provides that *nothing* contained in that section and article of the Constitution shall be construed as prohibiting the Legislature from authorizing gravity drainage districts and irrigation districts to impose and collect acreage taxes and forced contributions, and further provides that such subdivisions may incur debt and issue negotiable bonds "when authorized by a vote of a majority in number of acres owned by land owners qualified to vote under the Constitution and laws of the State of Louisiana, *who vote at an election held for that purpose*". (Italics ours.)

It is thus seen that, in the various provisions of the Constitution relating to the authorization which local subdivisions must have to incur debt and issue negotiable bonds, it is specifically provided that they must be authorized by a majority of the electors qualified to vote, "who vote at an election held for that purpose".

But the section of the Constitution here under consideration provides that police juries may incur debt and issue negotiable bonds for the purposes therein stated, when authorized by a majority vote of the property taxpayers "who are qualified to vote under the Constitution and laws of this State". The qualifying phrase "who vote at an election held for that purpose" is omitted. Evidently this phrase was not omitted through oversight because Act No. 386 of 1938, amending Section 14 (f) of Article XIV, adopted by the same Legislature at the same session, included that phrase. Just why the Legislature omitted it from the amendment here considered

is not for us to say. But evidently the Legislature had some reason for doing so.

Article 270 of the Constitution of 1898 provided that the General Assembly should have power to enact general laws authorizing the parochial, ward, and municipal authorities of the state to levy special taxes in aid of public improvements, railway enterprises, etc., when authorized "by a vote of the majority of the property taxpayers in number entitled to vote under the provisions of this Constitution."

It will be noted that the provisions of that article are almost identical with the provisions of the amendment here under consideration. In Smith et al. v. Police Jury of Claiborne Parish et al., 125 La. 724, 51 So. 701, this court interpreted that provision to mean that the tax levy, to be valid, should be approved by a majority of all those qualified to vote and not merely by a majority of those voting at the election. The court pointed out the difference between the wording of Articles 232 and 270 of the Constitution of 1898. Article 232 provided that, for giving additional support to public schools and for erecting public buildings, etc., special taxes in excess of the limit specified therein might be levied when submitted to a vote of the property taxpayers, "and a majority of the same in numbers, and in value voting at such election shall have voted therefor"; whereas Article 270 provided that the tax levy therein authorized should be approved "by a vote of the majority of the property tax-payers in number entitled to vote under the provisions of this Constitution".

Article 242 of the Constitution of 1879 gave the General Assembly power to enact laws authorizing the parochial and municipal authorities to levy special taxes in aid of public improvements or railway enterprises, when authorized "by a vote of the majority of the property taxpayers in numbers and in value".

In Citizens and Taxpayers v. Williams, President of Police Jury et al., 49 La.Ann. 422, 21 So. 647, 37 L.R.A. 761, it was held that what that clause meant was a majority of the property taxpayers actually present and voting at an election. But this court pointed out in the case of Smith v. Police Jury, supra [125 La. 724, 51 So. 702], that "The framers of the Constitution of 1898 in revising article 242, Const. 1879, changed its phraseology so as to make it read 'by a vote of the majority of the taxpayers in number entitled to vote under this Constitution'". For that reason the 49 La.Ann. case was distinguished from the Smith v. Police Jury case, supra.

In the case of Flores v. Police Jury, 116 La. 428, 40 So. 785 this court said:

"The framers of the Constitution of 1898 intentionally divorced articles 232 and 270, and in the latter imposed more onerous restrictions on the voting of special taxes. Under article 232 a majority in numbers and value voting at the election controls, while article 270 requires a vote of the majority of the property taxpayers in number and in value entitled to vote under the provisions of the Constitution."

These decisions show that this court has taken cognizance of the difference in the wording of the various articles of the Constitution as relates to the authorization necessary for the levying of special taxes and the issuance of negotiable bonds. And the court has definitely held that those articles which do not include some such qualifying phrase as "who vote at an election held for that purpose" must be interpreted to mean that the majority which controls is the majority of all those who are qualified to vote.

■ From the wording of the amendment here under consideration, it is perfectly apparent that the policy jury has no authority to issue the bonds therein provided for unless authorized by a majority in number and amount of all the property taxpayers who are qualified to vote at the election called for that purpose.

In Smith v. Police Jury, supra, the court specifically held that the burden of proof was on the defendant to show affirmatively that the number of those voting for the tax represented "a majority of the taxpayers of the ward entitled to vote under the Constitution of this state".

The police jury, made defendant in the case at bar, made no such showing, and for that reason the judgment of the lower court must be set aside.

However, in view of the circumstances involved, we think the case should be remanded to the lower court and reopened for the sole purpose of hearing testimony as to whether those who voted in favor of the proposition constituted a majority of all those in the ward who were qualified under the Constitution and laws to vote at such elections.

We have discussed and decided only this' point because, if those who voted in favor of the bond issue do not constitute a majority of all those qualified to vote, the police jury has no legal authority to issue the bonds and cannot proceed further, regardless of any other point raised. This opinion is not to be understood as precluding plaintiff from further urging the other issues raised by his petition in case it should be shown on further hearing in the district court that those voting in favor of the bond issue constituted a majority of those qualified to vote.

For the reasons assigned, the judgment appealed from is set aside, and it is now ordered that the case be remanded for the sole purpose above stated; costs of this appeal to be paid by the police jury, all other costs to await final results.

## On Rehearing.

ROGERS, Justice.

The plaintiff, Roy K. Schultz, a resident and taxpayer of Ward One of Tangipahoa Parish, appeals from a judgment validating the proposed issuance by the Police Jury of serial bonds in the amount of $75,000, to run for a period of twenty-five years. The bonds are to be issued pursuant to a resolution adopted by the Police Jury, as the governing authority, under the provisions of Section 33 of Article 14 of the Constitution of this State, as amended by Act No. 392 of 1938, and a special election held by the resident taxpayers of the ward approving the proposition to incur debt and issue bonds for the purpose of erecting and maintaining an industrial plant for the conversion or processing of raw farm or agricultural products.

In his petition asking for the annulment of the election proceedings and for injunctive relief against the Police Jury, appellant sets forth a number of reasons why his demands should be granted. On the original hearing of the case, only one of the reasons was considered by this court, viz., that while it appears from the record the proposed bond issue was authorized by a majority of the votes cast, there was nothing to show that a majority of those qualified to vote participated in the election. Accordingly, the court remanded the case. Both parties applied for a rehearing.

Attached to the application of the Police Jury was a certificate from the register of voters of Tangipahoa Parish showing that the total number of voters qualified to vote at said election was 136 and their total taxable valuation was $217,955, and that therefore the proposition submitted to the electors was actually carried by a majority in number and amount of all the electors qualified to vote. On this showing, a rehearing was granted, and the case is now before us for further consideration.

One of the numerous objections urged by the plaintiff to the validity of the election proceedings is that they failed to advise the voters of the nature of the plant which it was proposed to erect from the proceeds of the bond issue. We think this objection is well founded.

The proposition, which was submitted to the voters at the special election called by

the Police Jury with respect to the proposed bond issue, is quoted in full in our opinion on the original hearing. Briefly stated, the proposition called upon the electors to determine whether they were in favor of erecting an industrial plant for the conversion and processing of raw farm or agricultural products. The proposition was couched in the most general terms. There is nothing in its language that advises the voters as to the nature, kind, or extent of the plant to be erected. It is stated in the briefs, and there is testimony to that effect in the record, it was commonly understood in the community that the plant would be used for the cooling and pastuerizing of milk.

Defendant contends that there is no force in plaintiff's objection because the election proceedings follow the words of Act No. 392 of 1938, and that "every intelligent person residing in Ward One knew" that the plant, which it was proposed to erect, would be a plant for the processing of milk.

What the voters knew or may have thought they knew privately as to the kind or character of the plant contemplated by the resolution of the Police Jury calling the election is not controlling. The only thing they could lawfully know is what was contained in the proposition actually submitted for their approval or disapproval. While the electors may have thought that in voting to approve the proposition they were voting for the erection of a plant for the processing of milk, there is nothing in the proposition, as approved, which binds the Parish Agricul-

tural Industrial Board, the creation of which is provided for by the statute, to establish such a plant, or which prohibits the board from erecting a plant for the conversion or processing of any other form of agricultural products, if it should see fit to do so.

Under Act No. 392 of 1938, the Police Jury can incur debt and issue bonds for the establishment and maintenance of industrial plants for the conversion or processing of farm or agricultural products only when authorized by the people themselves by means of an election properly called and held. The authority to designate the kind or character of the proposed industrial plant is entrusted by the statute to the people alone and can not be delegated by them either to the Police Jury or to the Agricultural Industrial Board.

There was no lack of power in the Police Jury to call the election, but the electors themselves should have determined the kind or character of the plant to be erected from the proceeds of the bonds voted by them. Instead of doing this, however, they in effect authorized the Police Jury to issue the bonds and the Parish Agricultural Industrial Board to use the proceeds to establish any kind or character of industrial plant for the conversion or processing of farm or agricultural products that the Board might in its discretion see fit to establish. The evil of a proposition submitted in the general form as was done in this case is that voters who may be hostile to one kind of industrial plant and who would vote against extending aid to

such a plant may be induced, by reason of the supposed probability of the construction of the kind of plant which they desire to assist, to vote in its favor and thus the proposition in that form may be approved by the requisite majority when, had the proposition been submitted in specific form, it would have been defeated.

Our conclusion is that in all propositions submitted to the electors under the terms of Act No. 392 of 1938, the electors are entitled to be fairly informed of the nature and kind of the proposed industrial plant they are called upon to aid, in order that they may be prepared to intelligently vote to approve or disapprove the proposition.

The proposition to incur debt and issue bonds under review in this case is not such a proposition. Neither the resolution of the Police Jury nor the notice to the voters sets forth the nature or kind of the proposed industrial plant. The failure to specify the character of the plant for or against which the vote was to be taken is a fatal defect. Such a proposition could not be legally submitted to the voters or have any effect if submitted and approved by them.

Certain of plaintiff's objections are leveled at the constitutionality of Act No. 392 of 1938. It may be that these objections are worthy of consideration, but as it is not necessary to determine their soundness in this case, and as counsel have not seen fit to fully enlighten the court as to their merits, we have not discussed them.

For the reasons assigned, the judgment appealed from is annulled and it is now ordered that there be judgment in favor of Roy K. Schultz, plaintiff, and against the Police Jury of the Parish of Tangipahoa, as the Governing Authority of Ward One of the Parish, decreeing that all the proceedings taken by the Police Jury in connection with the election held by the qualified taxpayers of Ward One in Tangipahoa Parish *to incur debt and issue bonds*, providing funds for erecting and maintaining an industrial plant for the conversion or processing of raw farm or agricultural products, and the erection itself, are invalid.

It is further ordered that the Police Jury be enjoined from incurring the contemplated indebtedness, issuing the bonds, constructing the plant, and levying taxes under the proceedings taken by them.

FOURNET, J., absent.