## No. 14,018.

R. T. CLIFTON ET AL. VS. W. F. HOBGOOD, MARSHAL, ET AL.

### SYLLABUS.

1. Articles 209 and 242 of the Constitution of 1879, being in *pari materia* are to be construed together, and, so construed, contemplate certain public improvements which are to be confined within the limits of the taxing districts upon which the special tax is to be imposed and certain other public improvements and railway enterprises which are not to be so confined.

2. Under those articles and the subsequent legislation upon the subject of special taxation (being Acts 84 of 1880, 35 of 1886, and 153 of 1894) it was competent, upon obtaining the assent of the property tax-payers, in the manner required, to impose a special tax in aid of a railroad which neither passed through, nor terminated in, the municipality taxed.

3. The legislation referred to contemplates and provides for the imposition, at one time, and for the entire term specified in the petition of the tax-payers, of the tax to be levied and the levying, or collection, of such tax, annually, during such term.

APPEAL from the Twelfth Judicial District, Parish of DeSoto.— *Lee, J.*

---

*George E. Head,* for Plaintiffs, Appellants.

---

*Alexander & Wilkinson,* for Defendants, Appellees.

---

The opinion of the court was delivered by

MONROE, J. The plaintiffs, who are property tax payers of Mansfield, in the Parish of DeSoto, seek to enjoin, perpetually, the collection of a five-mill tax, voted by the property taxpayers of that town, for a period of ten years, in aid of a railroad, and to have the same

decreed illegal and unconstitutional. The parties made defendant are, the Mayor, Aldermen and Marshal, of the town, the Kansas City Southern Railway Company, and the Guardian Trust Company, the latter being the transferree of the tax.

The defense is, that an election was held and that the tax in question was voted and levied under the authority of, and in conformity to, law, and to the petition of the property taxpayers, including several of the present plaintiffs; that the road was built as contemplated, and accepted by the town, and that the plaintiffs acquiesced therein, and, for several years, have acquiesced in, and paid, the tax, and are now estopped to deny its validity. The defendants, also, plead the prescription of three months, under Act No. 106, of 1892. There was judgment in the District Court in favor of the defendants and the plaintiffs have appealed. The grounds mainly relied on for the reversal of the judgment are:

1. That the taxpayers of a town are without legal or constitutional right to vote a tax against such town in aid of a railroad to be constructed outside of its corporate limits.

2. That if the voting of the tax, in this instance, was legal, the defendants are, nevertheless, without right to collect such tax, for the reason that it has not been levied as required by law.

The questions to be determined arise under certain provisions of the Constitution of 1879 and statutes regulating the enforcement thereof. Article 209 of that Constitution, after regulating the rate of State taxation, for general purposes, provided, "that, for the purpose of erecting and constructing public buildings, bridges, and works of public improvement, in parishes and municipalities, the rates of taxation herein limited may be increased when the rate of such increase and the purpose for which it is intended shall have been submitted to a vote of the property taxpayers of such parish, or municipality, entitled to vote under the election laws of the State, and a majority of the same voting at such election shall have voted therefor." Article 242 provided that "The General Assembly shall have power to enact general laws authorizing the parochial or municipal authorities of the State, under certain circumstances, by a vote of a majority of the property taxpayers in number and in value, to levy special taxes in aid of public improvements or railway enterprises; provided, that such tax shall not exceed the rate of five mills per annum, nor extend for a longer period than ten years."

Act No. 84, of 1880, provides, in substance; that elections concerning special taxation shall be ordered by the authorities of a parish or municipality upon the petition of one-third of the property taxpayers, and that, a majority of the persons entitled to participate voting therefor, a special tax shall be levied in aid of the construction of public buildings, bridges, and other works of public improvement, within the limits of the parish or municipality, or of bridges over streams dividing contigious parishes, or of public improvements, or railway enterprises, "extending within, or beyond, the limits of the State."

Act No. 35, of 1886, is somewhat more specific in prescribing the form and substance of the petition for the election. It limits the right to extend aid by special taxation to Louisiana corporations, requires a majority in value, as well as in number, of property taxpayers to carry the election, and authorizes non-resident taxpayers to vote, in person, or by proxy.

It provides that, where the result of an election is favorable to the tax, the parish, or municipal, authorities "shall, immediately, pass an ordinance levying such tax, and for such time as may have been specified in the petition, and shall designate the year in which such taxes shall be first levied and collected." In a subsequent section, it further provides that the Police Jury * * * shall, when the vote is in favor of the levy of such taxes, levy and collect, annually, in addition to other taxes, a tax upon all taxable property * * * sufficient to pay the amount specified to be paid in such petition; and such Police Jury * * * shall have the same power to enforce and collect any special tax that may be authorized by such election as is, or may be, conferred by law * * * for the collection of other taxes," etc.

The act also authorizes the assignment of the right to receive the special tax, with the *proviso,* however, that no such tax shall be paid until the proposed railway shall have been completed and in operation "to such point, in such parish, city, or incorporated town, as may" have been specified in the petition for the election, and it repeals all acts in conflict with its provisions.

Act 106, of 1894, provides: "Section 1. That any election held under Articles 209, 242 and 250 of the Constitution of 1879 and the laws to carry the same into effect may be contested by any party, or parties, in interest, on grounds of fraud, illegality, or irregularity, before any court of competent jurisdiction."

"Section 2. * * * any suit under the provisions of this act shall be brought within three months after the promulgation of the result of the election contested."

Act 153, of 1894, amends the previous legislation only in so far as to provide for elections and for the imposition of special taxes in the wards of the parishes as well as in parishes and municipalities.

It appears from the evidence that, at a meeting of the Board of Aldermen of the town of Mansfield, held upon February 13, 1896, there was presented to that body a petition, signed by more than one-third in number and value of the property taxpayers of the town, including, as we understand it, several of the plaintiffs now before the court; which petition alleged that great benefit would result to the town and its citizens from the construction of a railroad through the Parish of DeSoto, from North to South, "with depot and grounds located at, or near, the town of Mansfield;" and prayed that an election be ordered and a special tax of five mills *per annum* be levied, for ten years, on all the taxable property of the town, in aid of the same, such tax to become due and exigible from and after the completion and operation of the road in the parish, and the road to be completed and operated before the 1st of October, 1898. It further appears that the Board of Aldermen ordered the election as requested; that the election was held in March, 1896; that it resulted favorably to the levying of the tax; and that an ordinance was adopted levying the tax of five mills, annually, for ten years from January 1, 1897, "the said tax to be paid over, as collected, from year to year, to the said railway company, its successors and assigns, subject to the conditions and provisions of the petition of the property taxpayers." It is admitted that the Kansas City, Shreveport and Gulf Railway Company began and completed the work of constructing the road, and that the road was in operation, within the time specified in the petition of the taxpayers, and that passenger and freight depots were established near Mansfield, though not within the corporate limits of the town, the evidence showing that the depots are about a quarter of a mile outside such corporate limits, but are within the settled suburbs. It is also admitted that the road, as thus built, is part of a continuous line from Kansas City, Missouri, to Port Arthur, on the Gulf of Mexico.

## I.

We agree with the learned counsel for the plaintiffs that the two

articles of the Constitution which are called in question, dealing, as they do, with the same subject matter, should be construed together, McKenzie vs. Tax Collector *et als.*, 39 Ann. 947; Citizens and Taxpayers vs. Williams, 49 Ann. 422. But in thus construing them, we must give to each its utmost effect, so far as that can be done without bringing it into conflict with the other. Observing this rule, our conclusion is, that, whilst the two articles, taken together, contemplated a certain class of public improvements which was to be confined within the limits of the parish or municipality voting the tax, they also contemplated another class which was not to be so confined, and that a railway enterprise falls within the latter class, or is a class of itself. This view of the matter was distinctly recognized in the act of 1880, which was repealed by the Act of 1886 only in so far as its provisions were in conflict with those of the later act. There is, no doubt, some basis for the argument that the provisions of the act of 1880, relating to extra territorial railway enterprises, are in conflict with the provision of the Act of 1886, to the effect that "no such tax shall be paid * * * until the railway shall be completed and in operation to such point *in* such * * * incorporated town, as may be specified in the proposition set forth in the petition," etc. But. when we consider that the right to impose the special tax was not limited by the Constitution to railway enterprises actually terminating in, or passing through, a parish, or town, and is not so limited by those sections of the Act of 1886 which authorizes the ordering of the elections and the levying of the tax, it becomes necessary that the provision in question, before being accorded the effect claimed for it, should be construed with the sections referred to, and with the Constitution, and that we should, in that way, ascertain the meaning and purpose of the whole legislation.

It will hardly be denied that, whilst an electric light plant in Shreveport would confer no benefit on the town of Mansfield, a railroad between the two places might be of great advantage to both, though not entering the corporate limits of either. And this, we take it, was what the framers of the Constitution had in view when they failed to restrict the right to impose special taxes in aid of railways to those terminating, or to be established, within the districts to be taxed. And, equally is this true of the legislative action of 1880. When the General Assembly again took the matter up, in 1886, it was provided, by the first section of the act then adopted, that, "Whenever

one-third of the property taxpayers * * * shall petition * * * the municipal authorities to levy a special tax in aid of any railway company or corporation organized under the laws of this State, the said * * * municipal or town authorities shall order a special election," etc. And there is no intimation, either there or elsewhere, in the act, until we reach the particular clauses under consideration, that it was the purpose to restrict the right of the taxpayers, to provoke an election and to tax themselves, to cases where the railway to be aided was to pass through, or to terminate within, the corporate limits of the town. It is, therefore, sufficient, by the terms of the Act of 1886, to entitle the taxpayers to the election for which they petition, that the railway company which they propose to aid shall have been organized under the laws of this State.

The question, as the judge *a quo* well puts it, is one of benefit *vel non,* and if, in a particular case, the tax-payers are of opinion that it will answer their purposes to have a railway company which connects them with the rest of the world build its road, and establish its depot, within a few hundred yards of their town rather than through the heart of it, we are not prepared to hold that the act of 1886 denies them the right, contemplated by the Constitution, to impose a tax upon their property in aid of such road. The particular provision of the statute which we are now considering was intended, as we think, to secure the completion and operation of the aided road in the manner contemplated in the petition of the taxpayers as a condition precedent to the recovery of the tax by the corporation to be aided, but not as a limitation upon the right of the taxpayers to call an election and vote a tax for the aid of a road the construction of which will be to their advantage, though neither passing through, nor terminating within, the corporate limits of the town upon which the tax is to be imposed.

This being the case, we conclude, upon the facts stated, that the election of which the plaintiffs complain was authorized by the Constitution and laws of the State and is not open to the objections urged.

## II.

Both the Act of 1886 and the Act of 1894 provide that, where the election results favorably to the tax, the parish or municipal authorities "shall, immediately, pass an ordinance levying such tax and for such time as may be specified in the petition; and shall designate the

year in which such tax shall be first levied and collected." The word *"levying"* is thus, obviously, though incorrectly, used in the sense of *"imposing,"* and, so construing it, the Board of Aldermen of the town of Mansfield, after ascertaining the result of the election, passed an ordinance *"levying"* the special tax voted, for ten years, as specified in the petition of the taxpayers, and designating the year in which it should "first be levied and collected."

In a subsequent section, the word *"levy"* is again used in connection with the grant of authority, and the imposition of the obligation, to *collect* the special tax, annually, and in the same manner as other taxes are collected, and it is thus used in the sense of *"collect,"* and does not, therefore, conflict with, but is in furtherance of, the preceding provisions.

The charge contained in the petition, that the election in question was carried by misrepresentation was not insisted on in the original brief filed, on behalf of the defendant and is not sustained by the evidence. The conclusions which have been stated render it unnecessary that we should pass on the defendant's pleas of prescription and estoppel.

Judgment affirmed.

BLANCHARD, J., takes no part, having been originally of counsel.