(48 South. 196.)

No. 17,322.

GOODEN et al. v. POLICE JURY OF LINCOLN PARISH et al.

(Nov. 30, 1908. Rehearing Denied Jan. 18, 1909.)

MUNICIPAL CORPORATIONS (§ 874*)—STATUTES (§ 183*) — RAILROADS — MUNICIPAL AID — ELECTIONS—PETITION—SUFFICIENCY.

The plaintiffs in this case obtained a judgment setting aside a special tax which had been voted for by the property tax payers of ward 1 of Lincoln parish in favor of a railroad corporation under the provision of article 270 of the Constitution and Act No. 202, p. 483, of the same year, and enjoining the police jury from collecting the tax. The tax had been voted at an election ordered by the police jury upon a petition of property tax payers. The ground assigned for setting aside the special tax and enjoining its collection was that the petition addressed to the police jury did not set forth the amount to be raised each year, but only a rate of five mills per annum was stipulated to be raised each year, and that it did not set out any definite number of years that the tax should run, but only that it should not exceed 10 years. *Held*, for reasons assigned, that the judgment appealed from was erroneous. Judgment reversed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1851; Dec. Dig. § 874;* Statutes, Cent. Dig. § 261; Dec. Dig. § 183.*]

(Syllabus by the Court.)

Appeal from Fourth Judicial District Court, Parish of Lincoln; Robert Brooks Dawkins, Judge.

Suit by J. W. Gooden and others against the Police Jury of Lincoln Parish and others. Judgment for plaintiffs, and defendants appeal. Reversed, and suit dismissed.

Barksdale & Barksdale, for appellants. Barnette & Roberts, for appellees.

NICHOLLS, J. The plaintiffs alleged that they are residents, citizens, and taxpayers of ward 1, Lincoln parish; that about the month of January, 1908, one-third or more of the citizens and taxpayers of ward 1, Lincoln parish, La., who were authorized to vote under the Constitution and laws of this state, petitioned the police jury for Lincoln parish to order a special election for said ward of said parish to vote upon a proposition of levying a special ad valorem tax of five mills on the dollar upon all the assessable property in said ward, for the purpose of aiding in the building and construction of the proposed line of railroad through a portion of Lincoln parish, to be known as the "Ruston, Natchitoches & Northeastern Railroad Company," for a period of time not to

exceed 10 years; that the said police jury failed to order said election as prayed for, whereupon the courts of said parish were appealed to for a writ of mandamus to compel the police jury to order said election. After trial of said cause the courts granted the writ, whereupon the said election was ordered, same being ordered held according to law, at the regular polling places in said ward, which election was duly held on the 5th day of May, 1908.

Petitioners represent that they are citizens and taxpayers of said ward and have a right to appear and contest this tax; that they have interest in same being annulled and set aside; that the said tax as above alleged is illegal, null, and void, and should be set aside for the following reasons, to wit:

First. That the petition praying for the election did not set forth the amount to be raised each year; that only a rate of five mills was stipulated to be raised each year.

Second. That the petition did not set out any definite number of years that said tax should run, but only that it should not exceed the constitutional limit of 10 years, this pretended limitation having no effect whatever, for the stipulation would have been written therein by the Constitution of this state, had said petition been silent upon this point. Petitioners aver that for the two reasons above stated the said tax is an absolute nullity; that both the amount to be raised each year and the exact time that the tax shall run must be set out in said petition, under the pain of nullity; that this suit is filed within three months from the holding and promulgation of this election; that the act of the said police jury in ordering this election upon this fatally defective petition is illegal, null, and void; that the said police jury should be cited to answer hereto; that each member should be so cited, and served in accordance with law; that said Ruston, Natchitoches & Northeastern Railroad Company should also be cited to appear and defend whatever interest it may have in the result of this suit.

In view of the premises, petitioners prayed for service hereof and citation in accordance with law upon the members of the police jury of Lincoln parish, La., also upon the said Ruston, Natchitoches & Northeastern Railroad Company, a corporation also domiciled in Lincoln parish, with J. C. Nolan, of same residence, as its president, and, after due and legal trial had, for judgment in their favor, annulling, avoiding, and setting aside the tax as above alleged, and enjoining the police jury from levying said illegal tax. They prayed for all needful orders and decrees, and for costs and general relief.

Defendants answered. After pleading a general denial, they admitted that more than one-third of the property owners entitled to vote in the election in question petitioned the police jury according to law to order said election as alleged; that said election was regularly held in accordance with said petition and according to law on May 5, 1908, the returns regularly canvassed, and result promulgated according to law. Defendants alleged that said petition in all respects fairly, substantially, and completely complied with the law. They prayed that plaintiffs' demand be rejected with costs, and for general relief.

The district court rendered judgment in favor of the plaintiffs, annulling, avoiding, and setting aside the tax voted to the Ruston, Natchitoches & Northeastern Railway Company on May 5, 1908, in ward 1, Lincoln parish.

The Ruston, Natchitoches & Northeastern Railway Company have appealed.

The petition of taxpayers referred to in plaintiffs' petition was as follows:

"Ruston, La., Jan. 28th, 1908.
"State of Louisiana, Parish of Lincoln.
"To the Honorable the Police Jury of the Parish of Lincoln, State of Louisiana.

"The undersigned citizens and property taxpayers of ward 1, Lincoln parish, La., being and

constituting more than one-third of the property tax payers in said ward 1, Lincoln parish, La., entitled to vote in the election herein prayed for, in number and value, respectfully request your honorable body to order a special election to be held in ward 1, Lincoln parish, La., for the purpose of submitting to the property tax payers of said ward 1, Lincoln parish, La., who are qualified to vote in said election under the Constitution and laws of the state of Louisiana, the question whether they, the said property tax payers, will authorize your honorable body, the police jury of Lincoln parish, to assess, levy, and collect annually from year to year, not exceeding ten years a special tax of five mills on the dollar on all of the assessable property in said ward 1 of Lincoln Parish, La., until the full sum of seventy-five thousand dollars be thereby collected.

"Said tax to be levied for and said sum to be paid to Ruston, Natchitoches & Northeastern Railroad Company, a corporation organized under the laws of the state of Louisiana and domiciled at Ruston, Lincoln Parish, La., for the purpose of aiding in the building and the operating of a railroad from a point within the town of Ruston, La., in a northeasterly direction through the parishes of Lincoln and Union, La., to a point at or near the town of Farmerville, Union Parish, La. Said special tax to be levied and collected during the years 1910, 1911, 1912, 1913, 1914, 1915, 1916, 1917, 1918, and 1919, and the proceeds thereof up to the aforesaid sum of seventy-five thousand dollars to be annually paid as collected to said Ruston, Natchitoches & Northeastern Railroad Company, its successors or assigns, provided that the said railroad or such railroad as it may form a part of, shall be completed and in operation on or before the first day of July, 1910, from Ruston, La., to a point at or near the town of Farmerville, Union parish, La.

"That said special election be ordered and held pursuant to article 270 of the Constitution of the state of Louisiana, Act No. 202, p. 483, of the General Assembly of Louisiana of the year 1898, and Act No. 23, p. 26 of the General Assembly of Louisiana of the year 1904, and in all respects according to law, not sooner than 30 days after the official publication of this petition and the ordinance of your honorable body ordering said election.

"That the police jury on behalf of ward 1 of Lincoln Parish, La., shall after due and legal delays and the due and legal promulgation of said election immediately pass an ordinance levying such tax for the time and for the years herein above specified, and designating the years for which said taxes shall be levied and collected."

Here follow the signatures of taxpayers.

The police jury of Lincoln parish, La., acted upon this petition in its ordinance No. 66, entitled:

"An ordinance ordering an election in pursuance to petition of the property tax payers of ward 1, of Lincoln Parish, Louisiana, including the town of Ruston, for the purpose of submitting to the property tax payers entitled to vote thereat, the proposition whether or not they will authorize the police jury of Lincoln parish, to levy and collect annually from year to year, a special tax of five mills on the dollar for ten years, on all assessable property in said ward to the amount of seventy-five thousand dollars in favor of the Ruston, Natchitoches and Northeastern Railroad Company for the purpose of aiding said Ruston, Natchitoches and Northeastern Railroad Company in building and operating a standard gauge steam railroad from the town of Ruston, La., to a point at or near to the town of Farmerville, La., the avails of such a tax to be paid annually to said railroad company, its successors or assigns, provided said Ruston, Natchitoches and Northeastern Railroad, or such railroad as it may form part of shall have been completed and in operation on or before July 1st, 1910, fixing the date and providing for the manner of holding said election."

The ordinance so adopted was as follows:

"Be it ordained by the police jury of Lincoln Parish, La., in special session convened for this purpose, that by reason of the foregoing petition an election of the legally qualified property tax payers of said ward 1 of Lincoln Parish, La., held on Tuesday 5th day of May, 1908, A. D., at the polling places at which the last preceding general election was held in accordance with the general election laws of the state, so far as applicable, and especially article 270 of the Constitution of Louisiana, and Act No. 202 of the General Assembly of Louisiana, approved July 14th, 1898, and acts amendatory thereof for the purpose of taking the sense of the property tax payers in said ward 1 of Lincoln parish, La., to levy a special tax of five mills on the dollar on all the property in said ward subject to taxation for ten years or until the sum of seventy-five thousand dollars shall be collected and paid to the Ruston, Natchitoches & Northeastern Railroad Company, a corporation organized under the laws of Louisiana, domiciled at Ruston, Lincoln Parish, La., to aid in the building and construction and operation of a standard gauge steam railroad from a point in the town of Ruston, La., in a northeasterly direction through the parishes of Lincoln and Union, to a point at or near the town of Farmerville, La., said special tax to be levied and collected for and during the years 1910, 1911, 1912, 1913, 1914, 1915, 1916, 1917, 1918 and 1919, and the proceeds thereof to be paid annually as collected up to the sum of seventy-five thousand dollars to the Ruston, Natchitoches & Northeastern Railroad Company, its successors or assigns, provided said Ruston, Natchitoches & Northeastern Railroad, or such railroad as it may form a part of, shall be completed and in operation on or before the first day of July, 1910, from Ruston, La., to a point at or near Farmerville, Union parish, La.

"Sec. 2. Be it further ordained, etc., that

the petition of the property tax payers and notice of election fixing the time and polling places, and the manner of holding said election, and giving names of commissioners of election, and prescribing the manner of counting the votes and making returns thereof, shall be published for more than 30 days preceding the holding of said election in the official journal of Lincoln parish.

"Sec. 3. Be it further ordained, etc., that all of the property tax payers voting at this election shall be registered voters (except women taxpayers) of ward 1, Lincoln parish, La., and that in order to determine the assessed value of the property voted, the voter shall endorse his name on the ballot together with the amount of property voted before depositing the same in the ballot box.

"Sec. 4. Be it further ordained, etc., that the tax assessor is hereby directed and required to furnish the commissioners of election at each polling place in ward 1, Lincoln Parish, La., a full and complete list of the qualified taxpaying voters with the amount of property assessed to each.

"Sec. 5. Be it further ordained, etc., that the returns of said election shall be made in accordance with law, by the commissioners of election to the board of supervisors of election of the parish of Lincoln, and also to the police jury of Lincoln parish not later than the 6th day of May, 1908, after said election, and result of said election shall be promulgated by the said police jury and also by the said board of supervisors of election in the manner prescribed by law.

"Sec. 6. Be it further ordained, etc., that the following named properly qualified taxpaying voters of said ward 1 are hereby appointed commissioners, and clerk of said election at Ruston precinct, viz.: G. A. Adams, Newt B. Jackson, O. K. Huey, commissioners; T. E. Ridge, clerk. At Vienna precinct, S. F. Ray, J. W. Gooden, J. M. Harrison, commissioners; C. W. Kinman, clerk.

"Sec. 7. Be it further ordained, etc., that this ordinance shall take effect from and after its promulgation."

The motion to adopt having been duly seconded and roll being called, the vote resulted as follows: Yeas, J. L. Bell, J. H. Deloney, D. S. Aswell, T. L. Waugh. Nays, none. Absent, G. W. Dye, J. W. Hawthorn, J. C. Jones. The president declared the ordinance adopted.

On May 16th a meeting of the police jury of Lincoln parish was held, at which the following proceedings took place:

"The minutes of the last meeting were read and approved, and in accordance with law, the board of supervisors of election, being present, submitted and presented to the police jury the ballot boxes and election returns of special election held in and for ward 1 of Lincoln parish on May 5, 1908, for the purpose of authorizing the levy of a five-mill tax for 10 years in aid of the Ruston, Natchitoches & Northeastern Railroad Company, together with the following proces verbal of the canvassing and tabulating of said returns, to wit:

"State of Louisiana, Parish of Lincoln.

"Be it remembered that we, the undersigned board of supervisors of election for the parish of Lincoln, state of Louisiana, did this day repair to the courthouse of said parish, for the purpose of canvassing and compiling the returns and ballots returned by the commissioners of election at the polling places at Ruston and Vienna, in ward 1 of Lincoln parish, La., of an election held therein on the 5th day of May, A. D. 1908, on the question of whether or not the police jury for Lincoln parish shall be authorized to levy and collect annually a special tax of five (5) mills on the dollar on the assessable property of said ward for ten (10) years for the purpose of collecting and paying to the Ruston, Natchitoches & Northeastern Railroad Company, the sum of seventy-five thousand dollars ($75,000) for aid of the construction of a standard gauge steam railroad from Ruston, La., to a point at or near the town of Farmerville, Union Parish, La., said road to be completed and in operation on or before the 1st day of July, 1910, A. D., according to the laws of this state, and in pursuance of the ordinance and proclamation of the police jury for Lincoln Parish, La., and notice of election of the board of supervisors of election.

"And then and there having arrived, we proceed in the presence of J. J. Booles and S. L. Barksdale and J. D. Barksdale, witnesses, duly qualified as electors in and for the said parish and ward, and others who chose to be present, and said returns and the number of votes cast for and against the said special tax having been by us ascertained from said compilation, and it appearing from said compilation of the votes cast in said polling places in ward 1 that the total number of votes cast in said election in favor of said special tax are as follows, to wit:

"Number of votes for said special tax, two hundred eighty-six (286).

"Number of votes against said special tax, one hundred twenty-three (123).

"Amount of property voted in favor of said special tax, $429,622.09, four hundred twenty-nine thousand six hundred twenty-two and $^9/_{100}$ dollars.

"Amount of property voted against said special tax $59,562, fifty-nine thousand five hundred and sixty-two dollars.

"And, having made public proclamation of the above results, we have closed the present proces verbal of said compilation of votes, which is hereby made in triplicate as required by law.

"Thus done and signed at Ruston, Lincoln Parish, La., this sixth day of May, 1908, A. D.

"J. K. McAllister,
"Geo. Knowles,
"Board of Supervisors of Election.

"Witnesses:
"J. J. Booles.
"Sam. L. Barksdale.
"J. D. Barksdale.

"Sworn and subscribed before me, the undersigned authority, the sixth day of May, 1908.

"J. M. Sims,
"Clerk District Court and Ex Officio Recorder."

On motion duly seconded, all the members present voted in favor of the reception and adoption of said procès verbal, and the resolution was declared adopted, and the clerk ordered to spread said procès verbal on the minutes.

The police jury then proceeded with the examination of the returns of said election, and on motion of J. H. Deloney, seconded by T. L. Waugh, the following Ordinance No. 68 was adopted, to wit:

"Ordinance No. 68.

"An ordinance promulgating the result of special election held in ward 1 of Lincoln parish, La., pursuant to the petition of the property tax payers of said ward entitled to vote therein and ordinance No. 66 of the police jury of Lincoln parish, as well as the proclamation of election and notice of election by the board of supervisors of election of Lincoln parish, on the proposed special tax of five mills on the dollar on the assessable property in said ward for ten years for the purpose of collecting and paying to the Ruston, Natchitoches & Northeastern Railroad Company the sum of seventy-five thousand dollars, in aid of the building and operation of a standard gauge steam railroad from the town of Ruston, to a point at or near the town of Farmerville, Union parish, La., upon condition that same be completed and operated on or before the first day of July, 1910, levying the said special tax and providing for the assessment and collection of the same.

"Whereas, upon the question of more than one-third of the property tax payers entitled to vote in the election therein prayed for and pursuant to Ordinance No. 66 of the police jury of Lincoln parish, La., adopted on the 23d day of March, 1908, A. D., and pursuant to the election proclamation of said police jury of date March 23d, 1908, and notice of election by the board of supervisors of election in and for Lincoln parish, of same date, the said petition, ordinance, proclamation and notice of election having been duly advertised by publication in the Ruston Leader, a weekly newspaper, published in the town of Ruston, La., according to law, for more than thirty clear days prior to the fifth day of May, 1908, a special election was held according to law in ward 1, Lincoln Parish, La., on Tuesday the fifth day of May, A. D. 1908, at the two polling places of said ward, at which the last general election was held, to wit: Ruston and Vienna.

"Whereas, the returns of said election have been made according to law and in accordance with the said ordinance, and proclamation of election by the police jury of Lincoln parish, La., and notice of the board of supervisors of election of Lincoln parish, La., and

"Whereas, the said police jury of Lincoln parish, La., and the said board of supervisors of election have canvassed and compiled the returns of said special election, and have found and promulgated the result thereof, declaring that the majority in number and assessed value of the property tax payers of said ward 1, voting at said special election voted in favor of said special tax: Now therefore:

"Section 1. Be it ordained by the police jury of Lincoln parish, La., in session convened for the purpose, that the said police jury does hereby declare, promulgate and proclaim that the majority in number and assessed value of the property tax payers of said ward 1, Lincoln parish, La., voting at said election voted in favor of said levy of said special tax, and does hereby proclaim and promulgate said special election in favor of said special tax in aid of the said Ruston, Natchitoches & Northeastern Railroad Company.

"Sec. 2. Be it further ordained, etc., that in accordance with said special election a special tax of five (5) mills on the dollar, or so much thereof as shall be necessary, be and the same is hereby levied upon all the assessable property in said ward 1 of Lincoln parish, La., for the purpose of collecting and paying to the Ruston, Natchitoches & Northeastern Railroad Company the sum of seventy-five thousand dollars ($75,000.00) in aid of the construction and operation of its standard gauge steam railroad from the town of Ruston, La., to a point at or near the town of Farmerville, Union parish, conditioned upon and provided the said standard gauge steam railroad, or such standard gauge steam railroad as it may form a part of, shall have been completed and in operation on or before the first day of July, 1910, from the town of Ruston to a point at or near the town of Farmerville, beyond the Bayou D'Arbonne, and to such point as shall be necessary and practicable for the transportation of freight and passengers to and from the town of Farmerville; said special tax to be levied and collected in ten (10) equal installments of $7,500.00 each, during the years 1910, 1911, 1912, 1913, 1914, 1915, 1916, 1917, 1918, and 1919; said special tax to be levied and assessed and collected annually during said years in addition to other taxes on all of the assessable property in said ward 1, and the collection of the same to be enforced by the same authority and means

as is authorized or may be authorized by law for the collection of other taxes.

"Sec. 3. Be it further ordained, etc., that the said special tax when so collected, up to the amount of seventy-five thousand dollars ($75,-000.00) shall be paid over annually to the Ruston, Natchitoches & Northeastern Railroad Company through its proper officer or its assigns after deducting lawful commissions for the assessment and collection of the same.

"Sec. 4. Be it further ordained, etc., that this ordinance shall take effect from and after its promulgation according to law."

"The motion to adopt being duly seconded, and roll being called, the result was as follows:

"Yeas: L. J. Bell, J. H. Deloney, G. W. Dye, T. L. Waugh. Nays: None. Absent: J. W. Hawthorn, J. C. Jones, D. S. Aswell.

"The president declared the ordinance adopted.

"L. J. Bell,

"President Police Jury, Lincoln Parish, La.

"J. T. M. Hancock, Clerk Police Jury Lincoln Parish, La."

It is admitted that the assessment of ward No. 1 of Lincoln parish for the year 1907 was $1,322,864, and for the year 1908 $1,-573,981. The taxpayers prayed that the election be held under article 270 of the Constitution of 1898, Act 202 of 1898, and Act 23 of 1904.

Article 270 of the Constitution reads as follows:

"The General Assembly shall have power to enact general laws authorizing the parochial ward and municipal authorities of the state by a vote of the majority of the taxpayers in number authorized to vote, under the provisions of this Constitution and in value to levy special taxes in aid of public improvements or railway enterprises; provided that such tax shall not exceed the rate of five mills per annum, nor extend for a longer period of ten years; and provided further that no taxpayer shall be permitted to vote at such election unless he shall have been assessed in the parish, ward or municipality to be affected for property the year previous."

Act No. 202 of 1898 is entitled:

"An act authorizing the parochial ward and municipalities of the state by a majority vote of the property tax payers in number entitled to vote under the provisions of the Constitution of 1898 and in value to levy special taxes in aid of public improvements or railway enterprises prescribing the manner in which special elections shall be held and the rate and duration of said special taxes and carrying into effect article 270 of the Constitution of 1898."

The first section of the act authorizes the parochial, ward, and municipal authorities of the state to order elections in their respective parishes, wards, or municipalities in the written petition of one-third of the property tax payers of such parish, ward, or municipality entitled to vote therein, and to levy special taxes in aid of public improvements or railway enterprises when authorized by a vote of the majority of the property tax payers in number entitled to vote under the provisions of the Constitution and in value, provided that such tax shall not exceed the rate of five mills per annum nor extend for a larger period than 10 years; and provided further that no taxpayer shall be permitted to vote at such election unless he shall have been assessed in the parish, ward, or municipality to be affected for property the year previous.

The second section provides that the petition mentioned in section 1 of the act should be signed by the property tax payers of such parish, ward, or municipality, and shall designate the object and amount of the taxes to be levied each year, and the number of years during which it shall be levied.

The fifth section provides that if a majority in number and assessed value of the property tax payers of such parish, ward, or municipality voting at such election shall vote in favor of such levy of such special tax, then the police jury on behalf of such parish, or any ward therein, or the municipal authorities for and on behalf of such municipality, shall immediately pass an ordinance levying such tax, and for such time as may have been specified in the petition, and shall designate the years in which such taxes shall be levied and collected.

The seventh section provides that the police jury of any parish, for said parish or any ward therein, or the municipal authorities or any municipality, shall, when the vote is in favor of the levy of said taxes,

levy and collect annually, in addition to other taxes, a tax upon all taxable property within said parish, ward, or municipality, for an amount sufficient to pay the amount specified to be paid in said petition; and such police jury and municipal authorities shall have the same authority and right to enforce the collection of such special tax as may be authorized by such election as is or may be conferred upon them for the collection of other taxes, which taxes so collected shall be used for the purposes named in said petition, and paid over when collected by the proper officers to the treasurer for the person or corporation entitled thereto, after deducting lawful commission for collecting same.

Act No. 23 of 1904 amends the third section of No. 202 of 1898, but as no issue arises in this case, under and by reason of that amendment, it is needless to do more than refer to the fact that an amendment of that act had been enacted.

In Bennett v. Police Jury et al., 113 La. 68, 36 South. 891, six taxpayers of the Cheneyville school district of the parish of Rapides enjoined the Secretary of State from promulgating the result of an election held in the school district mentioned at which the taxpayers of that district had voted in favor of a school tax for the purpose of purchasing grounds and building a schoolhouse, and enjoining the police jury from levying the tax voted for. The tax was sought to be imposed under article 232 of the Constitution and Act No. 131, p. 200, of 1898. The last-mentioned act was the legislative act carrying that article of the Constitution into effect.

The article referred to declared that the state tax on property for all purposes whatever, including expenses of government, schools, levees, and interest, shall not exceed in any one year six mills on the dollar of its assessed valuation, and, except as otherwise provided in the Constitution, no parish, municipal, or public board tax shall exceed in any one year ten mills on the dollar of valuation, provided that, for giving additional support to public schools and for the purpose of erecting and constructing public buildings, public schoolhouses, bridges, wharves, levees, sewerage work, and other works of permanent public improvement the title to which shall be in the public, any parish, municipal corporation, ward, or school district, may levy a special tax in excess of said limitation whenever the rate of such increase and the number of years it is to be levied and the purpose for which the tax is intended shall have been submitted to a vote of the property tax payers of such parish, municipality, ward, or school district entitled to vote under the election laws of the state and a majority of the same in number and in value voting at such election shall have voted therefor.

The General Assembly in Act No. 131 of 1898, entitled "An act to prescribe the manner in which special elections shall be held in any parish, municipality, ward or school district of this state, for the purpose of levying special taxes for the support of public schools and for the purpose of erecting and constructing public buildings, public schoolhouses, bridges, wharves, levees, sewerage work and other works of permanent public improvement the title to which shall be in the public in such parish, municipality ward or school district and to carry into effect article 232 of the Constitution of 1898," enacted in its first section that:

"Whenever one-third of the property tax payers of any parish, municipality, ward or school district in this state shall petition the police jury of such parish or the municipal authorities of such municipality to levy a special tax for the support of public schools and for the purpose of erecting and constructing public buildings, public schoolhouses, bridges, wharves, levees, sewerage work and other works of public improvement the title to which shall be in the public, the said police jury or municipal authorities shall order a special election for that purpose and submit to the property tax payers of such parish, municipality, ward, or

school district, the rate of taxation, the number of years it is to be levied and the purposes for which it is intended; provided that said election shall be held under the general election laws of the state and at the polling places at which the last preceding general election was held and not sooner than thirty days after the official publication of the petition and ordinance ordering the election."

In its second section it provided that:

"The petition mentioned in section 1 of the act should be in writing and designate the object and amount of the tax to be levied each year and the number of years during which it shall be levied."

The tax voted for in the Cheneyville school district was enjoined in that suit on the ground that under the law the petition of taxpayers must under pain of the nullity of the proceedings state the amount proposed to be raised each year from the tax; that it did not suffice that the petition specified the rate of the proposed tax. That, in the case then before the court, the amount proposed to be raised each year from the tax had not been stated in the petition of taxpayers, but the rate of the proposed tax had been. The Supreme Court (two justices dissenting) rendered judgment in favor of the plaintiff enjoining the police jury from levying the tax voted for.

The General Assembly, in Act No. 145, p. 317, of 1904, amended section 2 of Act No. 131 of 1898, so as to read that:

"The petition mentioned in section 1 of this act shall be in writing or print and shall designate the object and rate of the tax to be levied each year, and the number of years during which it shall be levied."

In the present case, the proceedings taken were not taken under the provisions of article 232 of the Constitution of 1898 and Act No. 131 of 1898, but under article 270 of that Constitution and Act No. 202 of 1898. These articles of the Constitution bear upon different subjects, as do also the two statutes mentioned. Proceedings which may be sufficient and correct under the first article (article 232) and the statute giving it effect

122 LA.—25

may have been entirely insufficient and wrong under the second article (article 270) and the statute giving it effect. Article 232 of the Constitution relates to governmental taxes and the power and authority of the different subdivisions of the state in reference to such taxes, while article 270 relates to contributions in the nature of taxes (but not governmental in character) voted by the property taxpayers themselves in aid of certain objects and purposes deemed by them to be beneficial to themselves and their property in particular localities.

Article 232 of the Constitution declares that no parish, municipal, or public board tax should exceed in any one year 10 mills on the dollar of valuation. It, however, authorized any parish, municipal corporation, ward, or school district to levy special taxes in excess of said limitation when the property tax payers within their respective territories should have voted in favor of conferring such authority upon them at an election at which the proposed rate of increased taxation and the number of years the tax was to be levied and the purpose for which the tax was intended had been submitted to them.

It will be seen that the Constitution itself fixed the precise questions which were to be submitted to the vote of the taxpayers at elections to be held for the purpose of conferring additional powers of taxation upon the different bodies named. These bodies themselves in ordering elections to be held for the purpose of obtaining authority to levy the special taxes referred to, had to conform to the directions of the Constitution touching the questions which were to be submitted to the taxpayers thereat. The General Assembly, in enacting Act No. 131 of 1898, intended to carry out the provisions of article 232, in referring to its second section to the petition of taxpayers mentioned in the first section of the act, said:

"It should be in writing and shall designate the object and amount of the tax to be levied each year and the number of years during which it shall be levied."

In framing their petition in the matter of the Cheneyville school tax the petitioners failed to designate the amount of the tax to be realized each year, and that failure gave rise to the litigation reported in Bennett v. Police Jury, 113 La. 68, 36 South. 891.

Basing themselves upon sections 2 and 5 of Act No. 131, plaintiffs in that case insisted that the petition of taxpayers must under pain of nullity designate the amount to be realized each year from the tax, and if, as in the case before the court, the rate of the tax was alone stated in the petition, without the amount to be realized, the law was not complied with.

They maintained that the General Assembly had the legal right to require the petitioners asking for the holding of an election to insert in their petition declarations additional to those called for by the provisions of article 232 of the Constitution, and that it was the duty of the petitioners to conform to the requirements of the statute.

This court sustained plaintiffs in the position which they took, and set aside the result of the election.

The General Assembly of 1904, by Act No. 145 of 1904, amended the second section of Act No. 131, making it now read as has been stated.

We are asked in this case to reverse the judgment of the district court setting aside and annulling the tax voted for by the taxpayers of ward No. 1 of Lincoln parish, and enjoining the police jury of that parish from levying the tax voted for.

It appears from the petition of the plaintiffs that the police jury of the parish of Lincoln parish (the body primarily called upon to decide whether the petition that had been presented to it, asking for the holding of an election conformed to the require-

ments of the statute or not) refused to order the election prayed for; that on application to the district court it was directed by mandamus to do so. On what ground the refusal was based does not appear from the record. The judgment of the court (whatever may have been its basis) was acquiesced in by the police jury and carried into execution. The advertisement for the election is not in the transcript, and there is nothing to show the form of the ballots which were voted. There is no contention made that they did not conform to and did not submit properly the questions which the petition prayed should be submitted to the taxpayers. No issue has been made as to the right of the General Assembly to declare what recitals should be made in the petition of taxpayers. Article 270 of the Constitution did not refer to any petition of taxpayers and of course said nothing as to what such a petition should contain. It did not direct what questions should be submitted for decision at an election to be ordered by the police jury. It left those matters to be dealt with by the General Assembly. It simply conferred upon the General Assembly the power through general laws to authorize the parochial, ward, and municipal authorities to levy special taxes in aid of public improvements or railway enterprises when by a vote of the majority of the property taxpayers they have consented to then have their property taxed for such a purpose. The power, right, and authority of the taxpayers to give their consent to the levying of such taxes could not exceed under the constitutional provisions, the levying of a tax of five mills per annum, nor extend for a longer period than 10 years.

Any vote of the taxpayers by which they should have consented to the levying of a tax exceeding five mills per annum or extending for a longer period than 10 years would be violative of the Constitution, null,

void, and of no effect. Any vote, however, which authorized the levying of special tax of five mills per annum or less, or extended for a period of 10 years or less, would, so far as constitutional provisions were concerned, be legal and authorized. There is no claim made in this case that constitutional provisions have been violated. What is charged is that statute provisions have not been complied with. An examination of the proceedings taken in this matter shows, we think, beyond doubt, that the taxpayers of ward 1 of Lincoln parish, at the election held on the 5th of May, 1908, consented to their property being taxed to the amount of $75,000 in aid of the building and construction of the railroad named; that they consented that the police jury should assess, levy, and collect annually from year to year, not exceeding 10 years a special tax of five mills on the dollar, on all the assessable property in ward 1 of Lincoln parish, until the full sum of $75,000 had been thereby collected; that said special tax should be levied and collected during the years 1910, 1911, 1912, 1913, 1914, 1915, 1916, 1917, 1918, and 1919; and that the proceeds of said tax, up to the sum of $75,000, be annually paid as collected to the said railroad. The prayer of the petition was that the police jury should, after legal promulgation of the election, immediately pass an ordinance levying such special tax for the time and for the years specified, and designating the years for which said taxes should be levied and collected.

This was what the taxpayers consented to. Counsel of appellants contend in their brief that the citizens of ward 1 of Lincoln parish have fairly and substantially complied with the provisions of Act No. 202 of 1898 in all its essential elements, according to the construction placed upon it by the majority opinion of the Supreme Court. That the petition of taxpayers for an election on a propo-

sition of granting aid to a railway enterprise is to be construed as a whole, giving effect to every part of it, and a substantial compliance with the provisions of the enabling act, in the absence of fraud, deception, or injury, is sufficient.

That a petition which sets forth the particular years in which the proposed tax is to run and be levied, and the total amount to be raised by the tax is declared, is a fair, substantial and complete compliance with the statutory provision that the petition shall set forth the object and amount of the taxes to be levied each year and the number of years during which it shall be levied.

That when the petition designates 10 particular years in which the tax shall be levied and collected, and fixes the amount to be raised thereby at $75,000, the fair, reasonable construction to be placed on the petition is that the tax is to be levied and collected at the rate of $7,500 a year. That when such a construction of the petition is subsequently in question the construction and action of the police jury and parties interested without objection from any source should be considered as the rule of interpreting the intention of the petitioners and the taxpayers voting at the election.

Appellants contend that the construction placed upon the petition by the police jury was sustained by the law. That the law regards that as certain which is capable of being ascertained—citing Mobile R. R. Co. v. Tenn., 153 U. S. 497, 14 Sup. Ct. 968, 38 L. Ed. 793; U. S. v. Smith, 5 Wheat. 159, 5 L. Ed. 57. That the petition as well as the statute is to be construed as a whole, giving effect to every part of it. Civ. Code, arts. 16, 1948, 1955. That, if the meaning of the petition were doubtful, the construction placed upon the parties and the manner in which it has been executed by the police jury with the assent and acquiescence of all parties interested should furnish a rule for its

interpretation. Civ. Code, art. 1958; State ex rel. R. R. Co. v. Knowles, 117 La. 134, 41 South. 439.

That where a petition from taxpayers is the foundation of the proceedings technical defects will be disregarded. Cooley on Taxation, p. 563; Scott v. Hansheer, 94 Ind. 1; Jussen v. Board, 95 Ind. 567. That a substantial compliance with the law, in the absence of fraud, is sufficient. Wilmington R. R. v. Commissioners, 116 N. C. 563, 21 S. E. 205.

They cite Elliott on Railroads as saying that:

"Some of the courts lay it down as a strict rule, and hold that they will not undertake to say that any requirement of the statute is immaterial; but this we regard as an extreme doctrine. We think there may be provisions, a departure from which the courts may well adjudge of such little importance as not to invalidate the proceedings. Statutes empowering municipalities to grant aid to railroads are unquestionably to receive a strict construction, but not such a construction as will make matters important that are clearly immaterial." Elliott on Railroads, p. 850.

Counsel of defendant cite additionally, in support of their position, Elliott on Railroads, pp. 836, 858; Williams v. Hall, 65 Ind. 129; Wilson v. Hamilton, 68 Ind. 507; Yarish v. Cedar Rapids Co., 72 Iowa, 566, 34 N. W. 417; St. Louis & S. F. R. Co. v. Gracy, 126 Mo. 472, 29 S. W. 579; Clifton v. Hobgood, 106 La. 535, 31 South. 46; V. S. & P. R. R. Co. v. Goodenough, 108 La. 442, 32 South. 404, 66 L. R. A. 314; James v. Ark. Southn. R. R., 110 La. 146, 34 South. 337. They say that:

"Plaintiffs' sole reliance is the strictest possible construction of the petition. It does not state in so many words and figures that the amount to be raised by the tax is $7,500 each year, but we contend that this requirement is substantially and completely complied with nevertheless.

"The essence and substance of the requirement is to limit and fix the amount to be collected by the tax and paid to the railroad company. The petition definitely and unequivocally fixes this amount at $75,000. It definitely and unequivocally fixes the number of years, and designates the particular years in which the tax must run. The only fair and reasonable construction

that can be put on the petition as a whole in this respect is that the amount is to be paid in 10 annual installments, as the police jury has construed it and as they have levied the tax. We fail to see the difference in principle or in substance between stating the total amount to be realized and the number of years the tax must run, and stating the amount to be realized each year and the number of years it must run. In the one case the total amount is arrived at by the process of multiplication, and in the other by the process of division. Under this petition the tax must run for the full certain years. If the five-mill tax, by reason of an unexpected increase in the assessment, should be sufficient to pay the total amount of $75,000 in a shorter time, the tax must run nevertheless, according to the petition, for the full 10 years. The police jury in such case could only be required to levy (as they have levied) such a part of the five-mill tax as may be necessary to raise the annual installments as they fall due. The police jury fairly and properly construed the annual installments as stipulated in the petition to mean and intend equal annual installments. If the amount to be realized from the tax each year be considered mandatory and sacramental, then, by a fair and reasonable construction of the petition as a whole, the annual amount is easily obtained by calculation.

"The assessment of the ward in 1907 was $1,322,000. In 1908 it is $1,573,981. The natural increase in value and the increased valuation of railroad mileage have already so increased the assessment that the five-mill tax will more than pay the $7,500 in 1910. After that, if the assessment increases as may be reasonably expected, the police jury will have to estimate the assessment and levy such part of the five mills voted as may be necessary to pay each installment of $7,500 as it comes due. There is no complaint of this, and we understand their action to be in compliance with the law."

Plaintiffs say:

"Vigorous complaint is made against strict construction, but the trouble is not strict construction, but strict conditions imposed by law. Defendants are simply asking that we strike out of the law the words 'the amount to be levied each year.'"

But the lawmaker has seen fit to include them, and we have no right to nullify that part of the law. However forcible an argument may appear, the court can only say:

"When a law is clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Arrowsmith v. Durell, 21 La. Ann. 295.

There has been no violation of the constitutional provisions in this case by either the

General Assembly, the police jury of Lincoln parish, or the property tax payers of ward 1 of that parish. The latter have consented and voted that the police jury of Lincoln parish should levy a special tax on the property of that ward of $75,000 in favor of the Ruston, Nachitoches & Northeastern Railroad, in aid of the building and construction of its railroad, said tax not exceeding a rate of five mills per annum, nor extending for a longer period than 10 years.

The levying of this special tax by the police jury of Lincoln parish was consented to by a majority of all the property taxpayers in said ward 1 (in number and amount), at an election held under the orders and authority of the police jury, the call for the election having been granted upon petition of the taxpayers of the ward.

The police jury to whom the petition was addressed was necessarily called upon to examine its recitals and determine whether or not this conformed to legal requirements. In reaching its conclusions it was not confined to the exact wording of the petition. It had the right to consider the petition as a whole, and ascertain from it whether it covered all the matters necessary to be stated for it to legally submit to a vote of the property taxpayers of the ward the matters which the petitioners—property tax payers—sought to have submitted to them, with such certainty as to convey to the latter all the issues which the statute intended and required should be placed before them to enable them to cast their votes intelligently, and without danger of being misled upon the propositions submitted to them.

Even in criminal matters, where very great strictness in matters of recital is required, the tendency of modern jurisprudence is to look rather to substance than to spirit, to conform to ideas rather than to words, and to hold that while an indictment under a statute creating an offense must set forth the facts constituting the crime with such certainty that, upon hearing the indictment read, the defendant should clearly understand the charge he is called upon to answer, and the court shall feel no doubt as to the judgment to be pronounced, the indictment need not follow ipsissimis verbis the language of the statute.

In the present civil case, the police jury, after examination correctly reached the conclusion that the petition addressed to it was sufficient, and, acting upon that conclusion, it submitted to a vote of the property tax payers of ward 1 the proposition which it contained and embraced, using the language which it did.

The taxpayers of the ward voted upon the propositions as submitted to them without objection or question from any quarter as to the terms of the issues submitted to them being at variance with the prayer of the petition, or as to the right and authority of the police jury to order the election and submit the issues which they did to the voters. It is not pretended that the voters have been misled, or that the vote cast and promulgated does not express the willingness and consent of the majority of the taxpayers of the ward that the special tax as submitted and voted for should be levied and collected. We must assume that the police jury will in due and proper time levy and collect the special tax, as it was submitted to be voted for and as voted for in 1910, and the following years up to and including the year 1919. We think the judgment of the district court is erroneous, and it should be set aside.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled, avoided, and reversed, and it is now ordered and decreed that plaintiffs' demand be rejected and their suit dismissed.